UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL CUMMINGS,

        Plaintiff,

v.

TAC MANUFACTURING,                      Case No. 10-10519
                                                                          Honorable Julian Abele Cook, Jr.

        Defendant.

ORDER

On February 5, 2010, the Plaintiff, Rachel Cummings, filed a complaint with this Court in which she alleged that her former employer and now the Defendant, TAC Manufacturing ("TAC"), wrongfully interfered with her rights under (1) the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1), and (2) the Michigan Workers Disability Compensation Act, Mich. Comp. Laws § 418.301(11). On September 21, 2010, the Court, acing upon the parties' stipulation, entered an order which dismissed her workers' disability claim with prejudice.

TAC has now moved for the entry of a summary judgment pursuant to Fed. R. Civ. P. 56(c), believing that there are no genuine issues of a material fact relating to Cummings's remaining claim under FMLA. For the reasons that have been stated below, TAC's motion will be granted.

I.

Cummings began her employment with TAC in 2001 as a full-time hourly production associate, and worked with the expressed or implied knowledge and awareness of an "Associate Handbook" that had been distributed to her and other employees by TAC as a part of its orientation program. Significantly as it pertains to this lawsuit is an attendance policy wherein points are

1

assessed against full and part-time employees on a graduated scale for their absences from work on the basis of the amount of time missed from the job. Paragraph 8(a) of the "Associate Handbook" has applicability to this lawsuit and reads, in pertinent part, as follows:[1]

<u>Absence:</u>
| | |
|---|---|
| Absent with contact/call prior to start of shift | 2 points |
| Absent with call after start of shift up to four (4) hours | 4 points |
| Absent without call during first four (4) hours of shift | 6 points |

In its pleading papers, TAC characterized Cummings as a worker with "a long history of attendance problems," who had accumulated 8 points in June of 2006; 11 points during the months of February and June in 2007; and 10 points in June of 2008, November of 2008 and June of 2009. Inasmuch as Cummings had accumulated 10 points as of July 1, 2009, an additional two points would have led to her firing.[2]

The parties agree that from August 24, 2009 through October 22, 2009, Cummings was absent from her job on an approved leave under the FMLA.[3] The reason for her absence during this period of time stemmed from a work-related physical malady (i.e., a tendinitis condition in her wrists). In addition, the parties agree that Cummings' first day back to work was October 23, 2009. Cummings also notes that she wore splints on each hand upon her return to work. In Cummings' opinion, these splints had an adverse impact upon her ability to meet the requisite daily

---

[1] Those employees who remain away from their work stations for more than a two hour period were deemed to be absent.

[2] Although the parties did not fully outline the total impact upon an accumulation of twelve points, the Court believes that any employee who garners twelve or more points within one year of the initial assessment is subject to termination.

[3] TAC claims that her FMLA leave commenced on August 19th rather than August 24th.

production quota for several days. However, Cummings emphasizes that she improved over the next few days after meeting her quota on at least one occasion.

TAC also notes that Cummings reported to work on October 28, 2009 with an upset stomach, diarrhea and nausea, and left her job assignment during the regularly scheduled work time (i.e., not during an authorized break period) on three distinct occasions between 8:00 and 10:00 in the morning to use the restroom. Each trip lasted between five and ten minutes, which caused Cummings to be away from her work station between 15 and 30 minutes that morning.

Thereafter, Chris Maxson, a team leader supervisor, after concluding that Cummings' hourly production quota was not satisfactory, consulted with a section manager, Dan Brown, as to how this situation should be handled. Brown and the others opined that if Cummings continued her pattern of using the restroom during work hours, she should be directed to leave the factory immediately. Thus, when Cummings temporarily left her work station to revisit a restroom once again, she was advised by Maxson - acting with Brown's concurrence that (1) her job performance was sub-par, and (2) under these circumstances, she would be required to leave the TAC facility. TAC reports that Cummings protested, especially after noting that such an absence from work would cause her to accumulate two additional attendance points, which, in turn, would subject her to termination. Cummings was thereafter referred to Linda Campbell, the Human Resources manager, who ratified Maxson's earlier admonition. Cummings was later assessed two attendance points in light of her absence from work for 4.25 hours that day. This computation gave her a total of 12 points which, in turn, ultimately led to her termination.

Cummings explains that, prior to the development of her tendinitis problems, being ill at work (and requiring the frequent use of a restroom) had not prevented her from satisfying her daily

quota. In previous efforts to save her job, Cummings accounted for the lost time by simply working faster. In her judgment, TAC had not properly accounted for the role that her splints played in hindering her performance, the stomach problems notwithstanding.

TAC insists that issues relating to Cummings' hands, wrists, arms, tendinitis, and the use of splints were never a topic of discussion on the day of her termination. TAC notes that Cummings resisted being sent home and indicated that she felt better, was willing to secure medicine during her lunch break, or adopt any other measures to remain at work and avoid accumulating 12 points.

TAC claims that it has treated other employees similarly by assessing attendance points to those workers who were sent home for reasons of illnesses. It also points out that Cummings did not attempt to retroactively designate her absence on October 28th as an FMLA leave, which it had allowed her to do in the past. According to TAC, Cummings had submitted a FMLA leave request on two previous occasions *after* the dates on which she was absent. Once the retroactive leave requests were granted, TAC removed the assessed attendance points from her record.[4]

II.

The matter now before the Court involves a request by TAC for the entry of a summary judgment in connection with Cummings' FMLA claim pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Under this Rule, a motion for a summary judgment should be granted if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." The burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In assessing a

---

[4]TAC also notes that it had extended a similar courtesy to another employee, James Lozier, who was reinstated after submitting paperwork which showed that the absences from work which prompted his discharge were eligible to be designated as FMLA time.

summary judgment motion, the Court examines pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is the responsibility of a court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered only if (1) the evidence clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence that is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Importantly, the presentation of a mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

Generally speaking, the FMLA entitles an eligible employee to take not more than 12 weeks of unpaid leave because of a "serious health condition" that makes the employee unable to perform the essential functions of her position. 29 U.S.C. § 2612(a) and (d). For purposes of the FMLA, the term, "serious health condition," identifies an illness, injury, impairment or physical or mental condition that involves, *inter alia*, continuing treatment by a health care provider. 29 C.F.R. § 825.113.

The FMLA makes it illegal for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615 (a)(1). To

prevail on a claim of interference with the ability of an individual to exercise her rights under the FMLA, an aggrieved individual must establish that (1) she was an eligible employee, (2) the defendant was a covered employer, (3) she was entitled to leave under the FMLA, (4) she gave defendant notice of her intent to take leave, and (5) the defendant denied her FMLA benefits or interfered with FMLA rights to which she was entitled. *Harris v. Metropolitan Government of Nashville and Davidson County, Tenn.,* 594 F.3d 476, 482 (6th Cir. 2010).

However, it is not incumbent upon Cummings to show that she was treated differently than other employees. In fact, Cummings only need to prove that she was denied an entitled benefit under the FMLA. *See generally, Hoge v. Honda of America Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir. 2004). An employer may violate § 2615(a)(1) regardless of the intent behind its conduct. *Id.*

Here, TAC neither disputes that Cummings was an FMLA eligible employee nor challenges that it is an employer subject to the provisions of this statute. Nevertheless, TAC contends that it is entitled to the entry of a summary judgment because Cummings cannot establish that she (1) was entitled to FMLA leave on October 28, 2009, (2) gave any notice of her intent to take such a leave on that day, or (3) was denied FMLA or was subjected to an unwarranted interference of her rights under FMLA by her employer.

As to the first prong, TAC argues that Cummings was not entitled to leave under the FMLA because she did not have an "incapacity" which could be attributed to a "serious health condition" as defined by 29 C.F.R. § 825.113 and 825.115. The term, "incapacity," means an inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom. 29 C.F.R. § 825.113(b). The serious health condition must be one that, *inter alia,* (1) incapacitates the person for more than three consecutive calendar

6

days, and includes treatment by a health care provider, or involves (2) a chronic serious health condition, (3) a permanent or long-term condition, or (4) a condition requiring multiple treatment. *See generally*, 29 C.F.R § 825.115(a).  29 C.F.R. § 825.115.

When the serious health condition relates to the employee's own health, that person is FMLA covered if she is unable to perform the functions of her job.  29 C.F.R. § 112(a)(4).  An employee is "unable to perform the functions of the position" if "the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act (ADA)" and its implementing regulation.  In turn, 29 C.F.R. § 1630.2 defines the term, "essential functions," as meaning "the fundamental job duties of the employment position the individual with a disability holds or desires." However, it does not extend to the marginal functions of the position.  The parties appear to agree that Cummings' tendinitis amounts to a serious health condition, as defined by the FMLA.

Nevertheless, TAC argues that Cummings was not incapacitated from working on October 28th, pointing out that she (1) worked for three hours on that day, (2) advised her employer that she could finish her daily work assignment, and (3) sought to remain on the job. In response, Cummings contends that TAC mistakenly designated her upset stomach as the health condition which adversely affected her last day of work.  However, she insists that the evidence is clear that she suffered from the "residual effects" of her tendinitis, as demonstrated by the use of splints as well as her inability to satisfy the TAC production goals after returning to work.

After carefully reviewing the evidence and the record in a light most favorable to Cummings, the Court finds that, as a matter of law, the Plaintiff will be unable to establish a critical

element of her FMLA claim. Assuming *arguendo* that Cummings could prove she was entitled to FMLA leave and that the Defendant denied or interfered with her FMLA rights, in the opinion of the Court, a reasonable jury – acting on the basis of current record – could not find that Cummings notified TAC of her intent to take an FMLA leave. There is no evidence that she ever raised the issue of tendinitis as a basis of her reduced productivity. Furthermore and subsequent to her involuntary termination, she made no attempt to have TAC retroactively designate her absence as FMLA leave - a procedure that she had exercised in the past. Although Cummings does not dispute either of these facts, she argues that the objective evidence of the continuing hindrance caused by her tendinitis should have alerted TAC that she was a qualified candidate for a FMLA leave. Thus, she believes – without proffering any legal support for this position – that it was the employer's obligation to afford her those rights under this statute to which she is entitled.

Significantly, the Court of Appeals for the Sixth Circuit has recognized that nothing in the FMLA statute places a duty upon an employer to affirmatively grant leave without such a request or notice by the employee. *Brohm v. JH Props., Inc*., 149 F.3d 517, 523 (6th Cir.1998). Thus, in order to invoke FMLA protection, "an employee must provide notice and a qualifying reason for requesting the leave." *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003). Although the employee need not expressly assert a right to take leave under the FMLA, she must impart enough information to the employer "to reasonably apprise it of [her] request to take time off for a serious health condition." *Id.* at 723 (citing *Brohm*, *supra* at 523. That is, the employee must communicate "enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred." *Id.* at 724. Here, the record indicates that Cummings was completely silent about the role, if any, that her tendinitis played in affecting her

work performance. Notwithstanding her failure to vocalize the tendinitis issue in a reasonably prompt manner, Cummings could have later conveyed her concern to the TAC supervisory staff; namely, that her productivity was hindered not by an upset stomach, but by her tendinitis-related wrist splints. Unfortunately, Cummings said nothing – +presumably acquiescing to what she now believes to have been TAC's flawed interpretation of the facts. The Court believes that accepting Cummings' argument would, in effect, require TAC to independently gather information that it is her duty to provide. This outcome is unwarranted by the prevailing law. Inasmuch as Cummings cannot show that she provided TAC with the statutorily required notice, the entry of a summary judgment in TAC's favor is warranted under this record.

III.

Therefore, for the reasons that have been stated above, TAC's motion for a summary judgment is granted, and this lawsuit is dismissed with prejudice.

IT IS SO ORDERED.

Dated: January 10, 2011         s/Julian Abele Cook, Jr.
       Detroit, Michigan       JULIAN ABELE COOK, JR.
                               United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 10, 2011.

                               s/ Kay Doaks
                               Case Manager